# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.: 1:21-cv-2230

## STEVEN STRAUGHEN, ASHLEY STRAUGHEN, and RICHARD WILLIAMS,

Plaintiffs,

v.

## DALBO, INC. d/b/a DHI ENERGY SERVICE

Defendant.

---

## CIVIL COMPLAINT AND JURY DEMAND

---

The Plaintiffs, Steven Straughen, Ashley Straughen, and Richard Williams, by and through their undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submit this Civil Complaint and Jury Demand and assert:

## JURISDICTION AND VENUE

1. At all times relevant to this action, Plaintiff Steven Straughen ("Mr. Straughen") was and is a resident of Idaho and is domiciled there.

2. At all times relevant to this action, Plaintiff Ashley Straughen ("Ms. Straughen") was and is a resident of Idaho and is domiciled there.

3. At all times relevant to this action, Plaintiff Richard Williams ("Mr. Williams") was and is a resident of Colorado and is domiciled there.

4. Upon information and belief, at all times relevant to this action, Defendant Dalbo, Inc. d/b/a DHI Energy Service ("Dalbo"), was and is a Utah Corporation licensed to do business in Colorado with its principal address at 355 South 1000 East, Vernal, UT 84078.

5. At all times relevant, Dalbo purposefully availed itself of the privilege of conducting business in the State of Colorado.

6. Dalbo maintains a registered agent for service in Colorado located at 1900 W. Littleton Blvd, Littleton, Colorado 80120.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is a civil action in which at least two of the parties are citizens of different states.

8. Defendant is not domiciled in Colorado or Idaho.

9. Plaintiff Steven Straughen alone has incurred over $200,000.00 in medical expenses related to this incident.  He is also seeking non-economic damages and additional damages for physical impairment resulting from catastrophic injuries he sustained, including fractures of his pelvis, ankle, and spine.  Plaintiff Richard Williams has also incurred medical expenses related to the incident.  Mr. Williams and Ms. Straughen are likewise seeking non-economic damages for their losses.

10. Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Weld County, Colorado.

## **FACTUAL ALLEGATIONS**

11. Plaintiffs incorporate herein by this reference the allegations set forth with specificity in paragraphs 1 through 10 of this Civil Complaint, as if set forth *verbatim*.

12. Upon information and belief, at all times relevant to this action, Edge Energy II LLC ("Edge"), was the operator and general contractor of the Simpson Pad 26 oil and gas production site located in Weld County, Colorado (the "Site").

13. Edge hired Skyline Well Testing, LLC ("Skyline") to assist with flowback operations on the Site, which entailed monitoring and operating all equipment on the Site in order to ensure  production of a mixture of water, oil, and natural gas vapors ("Produced Fluids") from the wells on the Site.

14. The Produced Fluids flow from the wellheads to separator vessels, which separate the water from the oil and natural gas vapors.

15. Once the water and oil are separated, they each travel through different pipes to be stored in water tanks and oil tanks, respectively, and the natural gas vapors travel through the vapor space of the tanks and into vent hoses that are connected to the incinerator to be safely combusted.

16. Edge contracted with Defendant Dalbo to provide the water and oil storage tanks used for the Site.

17. On November 27, 2019, Dalbo delivered four tanks to the Site, which were to be used for water storage.

18. On December 2, 2019, Dalbo delivered six additional tanks to the Site, which were to be used for oil storage.



Simpson Pad 26

19. Prior to delivery, Dalbo was responsible for maintaining and inspecting these tanks to ensure they were in good, working condition.

20. However, Dalbo failed to thoroughly complete inspections of the ten tanks provided for the Site immediately prior to or after delivery.

21. Dalbo also failed to resolve or repair issues detected during earlier inspections of the tanks.

22. Upon information and belief, the tanks provided by Dalbo were delivered in poor and unsafe condition, with conditions including but not limited to numerous pin holes, internal fractures, compromised liners, long-standing corrosion, a broken nipple, and at least one attached pipe that was open to atmosphere.

23. These issues should have been detected by Dalbo during inspections of the tanks.

24. These issues also should have been detected by Dalbo during the installation of the tanks at the Site.

4

25. Dalbo was responsible for performing maintenance on the tanks but did not do any maintenance on the tanks after they were delivered to the Site.

26. These issues made the tanks and the entire flowback system unsafe by allowing oxygen to continually enter the system and create a flammable atmosphere in the vapor space of the tanks and the vent hoses.

27. During the flowback operations on the Site, oxygen entered the system due to the poor conditions of the Dalbo tanks and created a flammable/explosive atmosphere within the vapor space of the system.

28. This oxygenated and flammable/explosive atmosphere flowed through the venting system and created the conditions that caused a flame to enter the vent hoses and vapor space of the tanks.

29. None of the storage tanks were grounded or bonded by Dalbo.

30. As a result, the tanks were not adequately connected to the earth, increasing the potential for a spontaneous spark from static electricity buildup.

31. On December 12, 2019, Plaintiffs Mr. Straughen and Mr. Williams (employees of Skyline) arrived on the Site to monitor the flowback operations.

32. Mr. Straughen served as the Senior Supervisor for Skyline, and Mr. Williams served as the Operator.

33. Mr. Straughen and Mr. Williams performed their usual duties, including monitoring the flowback operations and taking measurements of the quantity of Produced Fluids from the well approximately every hour.

34. At approximately 8:55 pm, Mr. Williams noticed an odor and saw smoke coming from water tank #4 (N406).

35. Both Mr. Williams and Mr. Straughen also heard a loud "pop" sound.

36. Mr. Straughen climbed the stairs to the top of water tank #4 and Mr. Williams climbed the stairs to oil tank #1.

37. Mr. Williams closed the vent valve located on top of oil tank #1 (N136).

38. Unbeknownst to Mr. Straughen and Mr. Williams, flames had made their way into the flammable/explosive atmosphere in the vent lines, likely as backflow from the incinerator or some other ignition source in the vent lines.

39. The flames traveled upstream through the vent line to the vapor space of the tanks containing the combustible fluids, vapors and oxygen, which had entered the system through the Dalbo tanks.

40. This would not have occurred but for the issues with the Dalbo tanks.

41. Suddenly, water tank #4 exploded, and the explosion catapulted Mr. Straughen into the air until he landed on the ground approximately 27 feet away from the tank.

42. At the same time, Mr. Williams was thrown from oil tank #1 to the top of oil tank #3.

 

43. Following the explosion, some of the tanks showed signs of a fire, including burn/soot marks.

44. Certified Safety and Health Officials (CSHO) from the Occupational Safety and Health Administration (OSHA) investigated the explosion and concluded that "the tanks had areas open that allowed oxygen into the otherwise closed system."

45. As a direct and proximate result of the explosion, Mr. Straughen suffered severe and permanent physical and psychological injuries, which required extensive medical treatment.

46. As a direct and proximate result of the explosion, Mr. Straughen sustained past and future medical damages, past and future wage loss, past and future non-economic damages, and physical impairment and disfigurement.

47. As a direct and proximate result of the explosion, Mr. Straughen's wife, Ashley Straughen, has been and continues to be denied the care, comfort, society, services, and companionship of her husband due to his injuries.

48. Ms. Straughen has expended significant time in order to care for Mr. Straughen, which includes, but is not limited to, taking him to and from medical appointments, assuming the household responsibilities, and being the sole caretaker for their children.

49. As a direct and proximate result of the explosion, Mr. Williams also suffered significant injuries and underwent medical treatment.

50. As a direct and proximate result of the explosion, Mr. Williams sustained past and future medical damages, past and future wage loss, past and future non-economic damages, and physical impairment and disfigurement.

51. Neither Mr. Straughen nor Mr. Williams were comparatively negligent at the time or prior to the explosion.

52. Neither Mr. Straughen nor Mr. Williams caused the explosion.

## FIRST CLAIM FOR RELIEF

### Negligence – Negligent Installation of Dangerous Tanks

53. Plaintiffs incorporate herein by this reference the allegations set forth with specificity in paragraphs 1 through 52 of this Civil Complaint, as if set forth *verbatim*.

54. Dalbo had a duty to individuals, including Plaintiffs, to ensure that the tanks installed on the Site were safe and in good working condition.

55. Dalbo had a duty to individuals, including Plaintiffs, to ensure that the tanks would be safe for all of their intended uses, as well as for all foreseeable and routine actions their foreseeable users would be performing on or near the tanks.

56. Dalbo had a duty to individuals, including Plaintiffs, to thoroughly inspect each of the tanks for any defects or problems that would affect the durability or integrity of the tanks.

57.  Dalbo had a duty to individuals, including Plaintiffs, to maintain each of the tanks and repair or replace any tanks with defects or problems.

58. Dalbo had a duty to individuals, including Plaintiffs, to properly ground or bond the tanks when they are installed on the Site.

59. Subcontractors, such as the Plaintiffs, expect that the storage tanks are properly installed and maintained by Dalbo and not susceptible to explosion.

60. Dalbo breached these duties when it negligently, carelessly, and without due care, failed to install tanks that were in good working condition; instead, Dalbo chose to install tanks that were in poor condition, those conditions including but not limited to pinholes, internal fractures, compromised liners, long-standing corrosion, a broken nipple, and at least one attached pipe that was open to atmosphere.

61. Dalbo failed to fully inspect each of the tanks before or after delivery to the Site and failed to repair or otherwise rectify problems that existed with the tanks.

62. Dalbo also failed to properly install the tanks in a safe manner by grounding them at the Site.

8

63. It was reasonably foreseeable that the Plaintiffs would have been on or near the tanks during the ordinary course of their work on the Site.

64. Likewise, it was reasonably foreseeable that tanks installed in poor condition with several ways for oxygen to enter the tanks would cause an explosion on the Site where Plaintiffs were working.

65. It was also reasonably foreseeable that tanks that are not properly grounded or bonded would cause an explosion to occur.

66. Lastly, it was reasonably foreseeable that Plaintiffs would suffer injuries as a result of the explosion.

67. These breaches by Dalbo were direct and proximate causes of the injuries sustained by Plaintiffs.

68. As a result of Dalbo's breaches of the aforementioned duties, both Plaintiffs have sustained economic damages, non-economic damages, and physical impairment and disfigurement as indicated above.

## SECOND CLAIM FOR RELIEF

### Negligence Per Se

69. Plaintiffs incorporate herein by this reference the allegations set forth with specificity in paragraphs 1 through 68 of this Civil Complaint, as if set forth *verbatim*.

70. In addition to the general duties identified above, Dalbo is required to comply with all codes, laws, and regulations pertaining to the provision, installation, and maintenance of storage tanks on oil and gas production sites.  This includes, but is not limited to, the American Petroleum Institute (API) Standards, the National Fire Protection Association (NFPA) Standards, and the Occupational Safety and Health Administration (OSHA) Standards.

71. NFPA 77 required Dalbo to take steps to prevent electrostatic discharge.

72. Likewise, API RP 4.5.9.1.b.2 required Dalbo to bond the tanks to an external ground to allow any electrostatic charge to dissipate.

73. Dalbo breached these duties when it failed to properly ground the tanks to the earth.

74. Additionally, API RP 75L required Dalbo to implement a safety system to ensure the site and the tanks Dalbo installed on the site were safe.

75. Similarly, API RP 76 required Dalbo to provide a safe workplace and comply with its safety obligations as a subcontractor to ensure that the operations (including storage of oil and water) are carried out in a safe manner.

76. Dalbo breached these duties when it installed unsafe tanks on the site that posed a serious risk to the operator, contractors, and subcontractors on the Site.

77. These standards are designed to protect those who routinely perform work on or near these tanks.   Plaintiffs Mr. Straughen and Mr. Williams fall into this class and suffered these kinds of injuries.

78. Dalbo's failure to properly install and maintain tanks in good working condition was the direct and proximate cause of the explosion and injuries suffered by Mr. Straughen and Mr. Williams.  They have sustained economic damages, non-economic damages, physical impairment and disfigurement as a result.

## **ALTERNATIVE THIRD CLAIM FOR RELIEF**

### **Statutory Premises Liability Pursuant to C.R.S. § 13-21-115**

79. Plaintiffs incorporate herein by this reference the allegations set forth with specificity in paragraphs 1 through 78 of this Complaint, as if set forth *verbatim.*

80. Alternatively, Dalbo, as the contractor who installed and was responsible for the storage tanks located on the Site, was legally responsible for the condition of the

storage tanks on the land, and was therefore a statutory "landowner" of the Site at issue pursuant to C.R.S. § 13-21-115.

81. At all times relevant to this action, Plaintiffs Mr. Straughen and Mr. Williams were each a statutory "invitee" on the Site pursuant to C.R.S. § 13-21-115(5)(a), because they were on the land transacting business in which the parties were mutually interested.

82. Specifically, they were hired as employees of Skyline to conduct flowback operations on the Site, including monitoring the production of Produced Fluids and storage of Produced Fluids in the tanks provided by Dalbo.

83. As an invitee, Dalbo owed Mr. Straughen and Mr. Williams, pursuant to C.R.S. § 13-21-115(3)(c)(I), a duty of reasonable care to protect them against dangers and conditions on the Site of which Dalbo knew or should have known.

84. Dalbo had a duty to warn Mr. Straughen and Mr. Williams of the dangerous conditions of the tanks on the Site discussed above pursuant to C.R.S. §§ 13-21-115(3.5); 13-21-115(3(b)(II).

85. At all times relevant to this action, Dalbo unreasonably failed to exercise reasonable care to protect Mr. Straughen and Mr. Williams from dangerous conditions on the Site of which it knew or should have known.

86. Dalbo also failed to warn invitees, including Mr. Straughen and Mr. Williams, of the known hazards posed by the tanks. These hazards include but are not limited to pinholes, internal fractures, compromised liners, long-standing corrosion, a broken nipple, and at least one attached pipe that was open to atmosphere.

87. There were no warnings on the tanks to indicate that these hazards existed or that oxygen was likely to enter the tanks.

88. Dalbo's above-referenced failure to exercise reasonable care to protect or warn Mr. Straughen and Mr. Williams of the dangers discussed above was a direct and proximate cause of their injuries.

89. Dalbo's breach of the aforementioned duties caused Plaintiffs to sustain past and future damages as indicated above, including economic damages, non-economic damages, and physical impairment and disfigurement.

## **ALTERNATIVE FOURTH CLAIM FOR RELIEF**

### **Strict Product Liability**

90. Plaintiffs incorporate herein by this reference the allegations set forth with specificity in paragraphs 1 through 89 of this Civil Complaint, as if set forth *verbatim*.

91. At all times relevant to this action, Dalbo was a "manufacturer" of storage tanks as defined in C.R.S. § 13-21-401 because it designed, assembled, made, produced, and constructed oil and water storage tanks, which are used on oil and gas production sites during flowback operations.

92. At all times relevant to this action, Dalbo was a "seller," as defined in  C.R.S. § 13-21-401, engaged in the business of leasing storage tanks for use on oil and gas production sites.

93. Dalbo leased the storage tanks that were used on the Site.

94. At the time that the storage tanks were leased for use on the Site, Dalbo had actual knowledge of defects in the storage tanks.

95. The storage tanks were expected to reach the users, including Edge, Skylime, and the other workers on the Site, without substantial change in the condition in which they were leased.

96. Dalbo delivered the storage tanks to the Site and installed them at the Site.

97. Edge did not manipulate or alter the condition of the tanks after Dalbo delivered them.

98. Skyline and its employees did not manipulate or alter the condition of the tanks after Dalbo delivered them.

99. The storage tanks were defective at the time they were leased by Dalbo or left Dalbo's control. These defects include but are not limited to:

   a. Pinholes;

   b. Internal fractures;

   c. Compromised liners;

   d. Long-standing corrosion;

   e. Broken nipple; and

   f. Attached pipe that was open to atmosphere.

100. The storage tanks were defective and, because of the defects, the storage tanks were unreasonably dangerous to Mr. Straughen and Mr. Williams, who were reasonably expected to use the storage tanks in the course of their work on the Site.

101. The defective nature of the tanks was unreasonably dangerous and created an unexpected risk of harm to Mr. Straughen and Mr. Williams by allowing oxygen to enter the tanks and create a flammable/explosive atmosphere.

102. It was reasonably foreseeable and expected that Mr. Straughen and Mr. Williams would have used the storage tanks as part of the operations on the Site in the manner in which they were used.

103. Under the entirely foreseeable and predictable operating conditions that occurred on the Site prior to the explosion, the storage tanks should not have allowed oxygen into the closed system.

104. The defects in the tanks were a direct and proximate cause of the injuries sustained by Plaintiffs.

105. Specifically, the defective tanks allowed oxygen to enter the closed system and create a flammable/explosive atmosphere, which caused the explosion.

106. As a result of Dalbo's defective tanks and the explosion they caused, Plaintiffs have sustained economic damages, non-economic damages, and physical impairment and disfigurement as indicated above.

107. Mr. Straughen and Mr. Williams did not misuse the storage tanks prior to the explosion.

108. Therefore, Dalbo is strictly liable to Plaintiffs for the injuries and damages caused by the defective storage tanks.

## FIFTH CLAIM FOR RELIEF

### Loss of Consortium

109. Plaintiff Ashley Straughen incorporates herein by this reference the allegations set forth with specificity in Paragraphs 1 through 108 of this Complaint, as if set forth *verbatim.*

110. The Ms. Straughen was married to Mr. Straughen at the time of the explosion.

111. The Defendant's violation of the above-mentioned duties caused Mr. Straughen's injuries.

112. As a result of the injuries Mr. Straughen sustained in this explosion, Ms. Straughen incurred past and future noneconomic damages, including, but not limited to, the denial of the care, comfort, society, services, and companionship of her husband.

113. As a result of the injuries which Mr. Straughen sustained in this explosion, Ms. Straughen also incurred past and future economic damages, including, but not limited

to, the value of Mr. Straughen's household services that Mr. Straughen would have performed if he had not been injured.

114. Therefore, Dalbo's actions as detailed above are the direct and proximate cause of Ms. Straughen's losses and damages.

## **JURY DEMAND**

Trial to a jury of six (6) is demanded on all issues so triable.

**WHEREFORE**, Plaintiffs Steven Straughen, Ashley Straughen, and Richard Williams pray for judgment against Defendant Dalbo in an amount to be determined at trial, for pre- and post-judgment interest, costs and expert witness fees, and for such other and further relief as the Court may deem just and proper.

Dated this 17th day of August, 2021.

Respectfully submitted,

ZANER HARDEN LAW, LLP

*/Kurt Zaner*
Kurt Zaner, Esq.  #40989
Sarah McEahern, Esq. #48401
ZANER HARDEN LAW, LLP
1610 Wynkoop Street, Suite 120
Denver, Colorado 80202
Telephone: (303) 563-5354
Facsimile:   (303) 563-5351
E-mail: kz@zanerhardenlaw.com
          stm@zanerhardenlaw.com

Plaintiff Steven Straughen's Address:

19986 E. Clipper Ln.
Bayview, ID 83803

Plaintiff Ashley Straughen's Address:

19986 E. Clipper Ln.
Bayview, ID 83803

Plaintiff Richard Williams's Address:

1605 41st St. Rd.
Evans, CO 80620