**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.:  1:21-cv-02230-NYW-SP

STEVEN STRAUGHEN

    Plaintiff

v.

BHS, INC. a/k/a BHS, INC. OF WYOMING

    Defendant

---

**BHS, INC. A/K/A BHS, INC. OF WYOMING'S RESPONSE TO PLAINTIFF'S MOTION AGAINST MODIFYING THE JUDGMENT BASED ON COLORADO'S NONECONOMIC DAMAGES CAP**

---

Defendant, BHS, Inc. a/k/a BHS, Inc. of Wyoming ("BHS"), through its attorneys, McConaughy & Sarkissian, P.C., hereby responds to Plaintiff's Motion Against Modifying the Judgment Based on Colorado's Noneconomic Damages Cap **[ECF 202]**.

## INTRODUCTION

Plaintiff's Motion should be denied because he incorrectly asserted C.R.S. § 13-21-102.5 must be pleaded as an affirmative defense lest it be waived by the defendant, and relied on inapplicable and uncontrolling case law to do so. This requirement does not exist and is nether included in Fed. R. Civ. P. 8 as an affirmative defense, nor is such a pleading requirement included in the statutory language itself. Instead, reduction to a noneconomic damages award occurs by operation of law because the statute's plain language "limits 'the monetary amount to which the plaintiff is entitled.'" *Alhilo v. Kliem*, 412 P.3d 902, 915 (Colo. App. 2016) (original emphasis omitted). Moreover, the statute requires the Court to impose the limit, rather than requiring the

defendant to raise the same. *See* C.R.S. § 13-21-102.5(4). Plaintiff also incorrectly argued that BHS "affirmatively ask[ed] the jury to award millions of dollars in noneconomic damages" **[ECF 202 at pp. 1-2]**, thus waiving any right to the cap. In fact, *Plaintiff* asked the jury to award "not a penny more than the million dollars" while BHS did not suggest a number at all, instead telling jurors it was for them to decide. **Ex. A**, Trial Transcript, Feb. 15, 2024, 34:14-15, 17; 56:11-16. BHS never took an action to affirmatively waive the statutory limitation and Plaintiff tried the case with the understanding the cap applied. As discussed below, because the statutory cap is mandatory and applies automatically, and because BHS has not waived the application of the cap, the Court should deny Plaintiff's Motion and impose the cap on noneconomic damages as required by Colorado law.

## LEGAL STANDARD

Plaintiff brought suit in the District of Colorado under diversity jurisdiction. **[Pl. Compl., ECF 1]**. As such, the Court must apply Colorado law to substantive issues. *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997). Damages caps are a matter of state substantive law and the parties are, therefore, bound by Colorado law; in this case, C.R.S. § 13-21-102.5. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). Courts must interpret statutes based on their plain language, giving effect to each word, and applying common meaning to words to avoid strained interpretations and adhere to the intended effect of the law. *Lira v. Davis*, 832 P.2d 240, 245 (Colo. 1992).

## ARGUMENT

**I.   THE COLORADO STATUTORY CAP ON NONECONOMIC DAMAGES IS MANDATORY, NOT AN AFFIRMATIVE DEFENSE**

Plaintiff requests the Court ignore the mandatory language of C.R.S. § 13-21-102.5 and instead award 97% more in noneconomic damages than allowed by Colorado law. There is no basis for this contention in Colorado jurisprudence. Plaintiff's reliance primarily on a Tenth Circuit case

2

interpreting and applying Oklahoma state law is also misplaced because the case is not binding on this Court, and the Oklahoma statute is distinguishable from the one in Colorado. Rather, Colorado law and the language of C.R.S. § 13-21-102.5 itself indicate it applies automatically, not as an affirmative defense that must be proved.

Plaintiff's contention that BHS is not entitled to the mandatory and automatic reduction in noneconomic damages because it was not pleaded as an affirmative defense, it "failed to raise its intent to rely on the cap," or it did not include it as an affirmative defense as "Defendants almost always" do is insufficient to support his position or require the Court to violate the clear intent of the legislature. **[ECF 202, Pl. Mot. at 1]**. Section 13-21-102.5 of the Colorado Revised Statutes states:

> (1) The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries.
>
> . . .
>
> (3) (a) In any civil action other than medical malpractice actions in which damages for noneconomic loss or injury may be awarded, <u>the total of such damages shall not exceed the sum of two hundred fifty thousand dollars</u>[1], unless the court finds justification by clear and convincing evidence therefor. <u>In no case shall the amount of noneconomic loss or injury damages exceed five hundred thousand dollars</u>.

C.R.S. § 13-21-102.5 (emphasis added). The statute goes on to state that these limits "shall be imposed by the court before judgment." C.R.S. § 13-21-102.5(4). The legislative "use of the word 'shall' creates a presumption that a stated requirement is mandatory." *EZ Bldg. Components Mfg., LLC v. Indus. Claim Appeals Office*, 74 P.3d 516, 518 (Colo. App. 2003).

The plain language of the statute is unambiguous and clear. The state legislature intended to limit the noneconomic damages in judgments and required <u>courts</u> – not parties – to impose these

---

[1] The statute permits these specific amounts to increase with inflation, as certified by the Colorado Secretary of State. The applicable limit for this case has increased from $250,000 to $468,010.

3

limits. While courts have discretion to double the allowable amount with appropriate evidence, even that increase is capped. "Colorado's non-economic damages cap serves the purpose of protecting defendants – specifically, Colorado defendants – from excessive liability." *Sanders v. Polaris Indus.*, Civil Action No. 21-cv-02055-NYW-MEH, 2023 U.S. Dist. LEXIS 84051, at *24 (D. Colo. May 12, 2023) (citing *Lanahan v. Chi Psi Fraternity*, 175 P.3d 97, 101 (Colo. 2008)) (explaining that the cap serves to "protect individual defendants from excessive liability without unduly restricting plaintiffs' recoveries").

Under the operation of the statute, "[o]nce the amount of a plaintiff's recovery is determined, . . . the noneconomic damages cap in section 13-21-203 comes into play." *Alhilo*, 412 P.3d at 915 (citing *Lanahan*, 175 P.3d at 101 (stating "[s]ection 13-21-203 limits 'the monetary amount to which the plaintiff is entitled'")). Importantly, "the cap does not cause a plaintiff's noneconomic damages to disappear – it merely limits a plaintiff's recovery to a specified maximum amount." *Id.* (citing *McAdory v. Rogers*, 215 Cal. App. 3d 1273 (Cal. Ct. App. 1989)) ("The statutory cap 'does not cause those noneconomic damages . . . suffered in excess of $250,000 to vanish. Instead, that section merely reflects a legislative policy decision to bar the recovery of more than $250,000 of those damages'").

The same is true in this case. The jury was free to award as much or as little as it chose for noneconomic damages. Section 13-21-102.5, however, reflects the policy decision of the Colorado legislature to limit the ultimate judgment for noneconomic damages to (for this case) $468,010. The statute then requires the court to impose those limits. *See* C.R.S. § 13-21-102.5(4). This is automatic application, not an affirmative defense. Even here, this Court suggested that this cap should have an application in its February 16, 2024 Minute Order requesting the parties file a proposed judgment that includes "the effect of Colorado's statutory cap damages for noneconomic loss" and cited C.R.S. § 13-21-102.5(3)(a). *See* **[ECF 200, February 16, 2024 Minute Order]**.

4

Contrary to Plaintiff's claims, the Tenth Circuit case, *Racher v. Westlake Nursing Home Ltd. Partnership*, does not indicate that the cap for noneconomic damages required by Colorado law is an affirmative defense. In *Racher*, the Tenth Circuit reached the conclusion the Oklahoma statutory cap was an affirmative defense by interpreting the specific language of the Oklahoma statute and Fed. R. Civ. P. 8. *See Racher*, 871 F.3d at 1165-67. This interpretation does not apply to the Colorado statute because of the significant differences between the Oklahoma statute at issue in *Racher* and C.R.S. § 13-21-102.3 at issue here. Notably, the Oklahoma statute limits the amount of noneconomic damages a jury is allowed to *award*, but removes the cap in certain circumstances. *See* Okla. Stat. tit. 23, § 61.2. It was the latter, "equally mandatory" but contradictory terms that removed this cap which the *Racher* court found compelling in holding that the statute was unclear and, therefore, did not apply automatically. *Racher*, 871 F.3d at 1167. In contrast, the Colorado statute does not limit the amount a jury can award, but directs the court to limit the amount of noneconomic damages to include in a final verdict. *See* C.R.S. § 13-21-102.5(4). This is to follow the legislature's goal of "protection of the public peace, health, and welfare" by "placing monetary limitations on such damages for noneconomic losses or injuries." C.R.S. § 13-21-102.5(1).

While Plaintiff also urges the Court to look to C.R.C.P. 8 in support of his position that a mandatory reduction imposed automatically by law after a verdict is an affirmative defense, that position too is incorrect. The federal rules of procedure governed BHS's answer. Fed. R. Civ. P. 8, unlike the Colorado equivalent, does not contain the requirement to plead "mitigating circumstances to reduce the amount of damage." *Compare* Fed. R. Civ. P. 8(c) *with* C.R.C.P. 8(c). As a result, the Federal rule does not require pleading affirmative defenses that only reduce damages. Even if the Colorado rule applied, it only requires a defendant to affirmatively plead "<u>mitigating circumstances</u>

5

to reduce the amount of damage." *See* C.R.C.P. 8(c) (emphasis added). The existence of a law with an automatic enforcement mechanism is not a mitigating circumstance that needs to be pleaded.

Further, a defendant bears the burden of proving affirmative defenses at the trial. *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F4th 474, 490 (10th Cir. 2023). However, C.R.S. § 13-21-102.5(4) specifically states that its limitations "shall not be disclosed to a jury in any such action." Because the limitation cannot be disclosed to the jury, it is not an affirmative defense that BHS could provide evidence to prove. Again, Colorado law indicates that this damages limitation is <u>not</u> an affirmative defense.

Other Tenth Circuit decisions support Defendant's position. For example, in *Yapel v. Japel Trucking, LLC*, the Court held that Kansas's wrongful death damages cap was not an affirmative defense that must be raised by the defendant and was not waived despite not including it in the answer or Pretrial Order. *Yaple v. Jakel Trucking LLC*, No. 2:21-CV-02045-JAR, 2023 U.S. Dist. LEXIS 130363, at *5 (D. Kan. July 27, 2023). In ruling the wrongful death cap could not be waived, the Court relied on a prior Kansas Court of Appeals decision holding that Kansas's statute limiting recovery of noneconomic damages did "not have to be pled in avoidance or as affirmative defenses." *Id.* at *6. It bears noting that the Kansas statute limiting noneconomic damages has similar requirements to C.R.S. § 13-21-102.5, such as including "cannot exceed" language, requiring an itemization of the verdict to reflect the amount awarded for noneconomic loss, and prohibiting instructing the jury about the limitation. *See* KSA § 60-1903. In rejecting the plaintiff's argument that failure to raise the damages cap in the final pretrial order constituted waiver, the *Yapel* court aptly commented that:

> The question of whether there is a statutory limit on noneconomic damages is not a merits issue for trial, nor is it a question of fact that the jury would have to decide. Therefore, including this issue in the Pretrial Order here would not have furthered the purpose of a pretrial order which is to "facilitate a trial on the merits." Moreover,

> because it is necessarily a posttrial issue, there was no risk of Plaintiff being surprised at trial that Defendant intended to assert this defense – the time to assert the defense is now, posttrial.

*Yaple*, 2023 U.S. Dist. LEXIS 130363, at *6-7.

The same holds true here. The application of Colorado's noneconomic damages cap was not, and could not be, a trial issue or fact question for the jury to decide, and the fact it could not be discussed did not leave Plaintiff without notice it would ultimately apply. As discussed, section 4 of C.R.S. § 13-21-102.5 states that the damages limitation "shall be imposed by the court before judgment." C.R.S. § 13-21-102.5(4). Like *Yapel* noted, it is exclusively a post-trial issue to be raised now, after a verdict was returned. Thus, not only was BHS legally and functionally precluded from "proving" the cap as an affirmative defense even if asserted, the law requires the Court to automatically impose the reduction after trial and before entering judgment. The statute is simply not an affirmative defense that can be raised, argued, or waived, as this would be contrary to the legislative's intent. Rather, its limitations are mandatory and apply automatically.

**II.   BHS DID NOT WAIVE THE APPLICATION OF THE NONECONOMIC DAMAGES CAP**

Next, despite Plaintiff's claims, BHS did not waive the application of the noneconomic damages cap here. The Colorado Supreme Court has considered what is required for a defendant to waive the application of this statutory cap and these circumstances were not met here. In *Giampapa v. Am. Family Mut. Ins. Co*, the jury awarded a lump sum for damages without specifying how much was for economic damages, noneconomic damages, or impairment/disfigurement damages. 64 P.3d 230, 245 (Colo. 2003). The Colorado Supreme Court found a waiver of the cap occurred because the defendant "did not object to the special damages instruction either before the instruction was delivered to the jury or after the jury read its verdict;" because it did not "ever request separate

7

instructions or ask the jury to allocate economic and non-economic damages more specifically;" and because it did not raise the argument in its initial appeal. *See id.*

Here, in contrast, BHS specifically indicated, in the verdict forms it proposed to this Court on December 4, 2023, that the jury award economic, noneconomic, and physical impairment or disfigurement damages separately. Indeed, the verdict forms provided to the jury at the close of evidence contained three separate categories of damages: economic, noneconomic, and physical impairment and disfigurement. The purpose for this separation was to ensure the statutory cap could easily be applied to the damages the jury awarded. Additionally, BHS has requested the cap be applied post-trial in its proposed judgment and in this response. As a result, under *Giampapa*, BHS did not waive the statutory cap on noneconomic damages.

Plaintiff's contention that he allegedly relied on BHS's answers and, by inference affirmative defenses, when presenting evidence[2] at trial is simply contrary to actions of Plaintiff during trial and post-trial. In closing arguments, Plaintiff's counsel asked the jury, in regard to noneconomic damages, to "***not to give a penny more*** than the million dollars for this particular category," then reiterated, "nothing more than a million." **Ex. A**, Trial Transcript, Feb. 15, 2024, 34:14-15, 17. Plaintiff's counsel then focused on permanent physical impairment damages, which are not capped, and asked the jury to award "30 million dollars for impairment." **Ex. A**, Trial Transcript, Feb. 15, 2024, 41:1-2**.** As a result, as part of Plaintiff's trial strategy, for other than economic damages, he requested a lopsided $30 million for permanent impairment and $1 million for noneconomic damages. These requests appear to be an attempt to avoid a substantial application of the noneconomic damages cap and are effectively an acknowledgement by Plaintiff that the cap applies. These actions indicate Plaintiff

---

[2] This, too, is without support and is belied by the fact that, even if pleaded, no party could directly present evidence to the jury concerning post-verdict setoffs or mandatory damages caps imposed after receiving a verdict. *See* C.R.S. § 13-21-102.5(4).

8

agreed to the application of the cap by "express or implied consent." Fed.R.Civ.P. 15(b)(2) (noting that, when issues not raised by the pleadings are tried by express or implied consent, "it must be treated in all respects as if raised in the pleadings"); *see also*, *Bill Dreiling Motor Co. v. Shultz*, 168 Colo. 59, 63 (1969) (noting that an affirmative defense can be tried by express or implied consent, even if not directly raised in the pleadings).

Further, post-trial, Plaintiff's counsel has told media outlets, including the Denver Post, in the days since receiving the verdict that the noneconomic damages cap applies in this case, stating "[t]he cap is $600,000" (the incorrect amount) and the $15 million awarded in noneconomic damages in this case is "money that will just go away" as a result. *See* **Ex. B**, February 20, 2024 Denver Post Article, p. 4. Plaintiff himself is quoted in article lamenting that this is "a biased law by a huge margin." *See* **Ex. B**, p. 2. It is disingenuous at best for Plaintiff to argue to the Court that C.R.S. § 13-21-102.5 does not apply to the verdict because it was not affirmatively pleaded as a defense, while simultaneously telling the media and community at large that it does, in fact, apply with the effect of making $15 million "just go away." *See also* Fed. R. Civ. P. 11. Notably, this article was published before Plaintiff's counsel had even discussed a proposed judgment with BHS, let alone discussed the application of the cap.

BHS has also always taken actions indicating it expected the cap to apply. As noted above, it specifically proposed a verdict form that included separate line items for economic, noneconomic, and permanent physical impairment damages that would allow the cap to be applied. *See Giampapa*, 64 P.3d at 245 (finding a waiver of the cap where the proposed verdict form did not separate these categories). In closing arguments, contrary to Plaintiff's claims, BHS did not "affirmatively ask" the jury to award millions of dollars in noneconomic damages. **[Pl. Mot. at 1-2, 4-5, ECF 202]**. In fact, BHS told jurors it could not quantify noneconomic damages, instead leaving it to the jurors' collective

9

judgment whether and what to award in that category. Specifically, BHS told the jury that "I am not able to quantify noneconomic damages in any colorful way to you guys. That is solely for you guys to decide," counsel went on to state that "I am not going to put a number in there," and "I will not even make a suggestion." **Ex. A,** Trial Transcript, Feb. 15, 2024, 56:11-16. Plaintiff's suggestion of waiver of the damages cap through conduct at trial or argument is without merit or support.

While the statutory cap on damages under C.R.S. § 13-21-102.5 is not an affirmative defense, even if it were, BHS has not waived its application because its actions supported ensuring the cap was applied, Plaintiff's tried the case assuming the cap would be applied, and BHS has now raised the application of the cap at the appropriate time, *i.e.*, before judgment is entered.

## CONCLUSION

Because the noneconomic damages cap was not an affirmative defense that could be pleaded or provided and applies automatically, BHS respectfully requests the Court reduce Plaintiff's noneconomic damage award to $468,010 pursuant to C.R.S. § 13-21-102.5(3)(a) before entry of judgment and incorporates by reference BHS' previously filed proposed judgment with the reduction applied and which includes calculations of pre-judgment interest based on same.

Dated this 26th day of February, 2024.

Respectfully submitted,

By: */s/ Nathaniel Rioux Jordan*
Kate L. McDonald, #42284
Nathaniel Rioux Jordan, #52715
McConaughy & Sarkissian, P.C.
4725 S. Monaco Street, Suite 200
Denver, Colorado 80237
Telephone: (303) 649-0999
Facsimile: (303) 649-0990
kmcdonald@mslawpc.com
njordan@mslawpc.com

AND

By: */s/ Jennifer W. Vedra*
Derek Harold MacKay, Missouri #59078
Jennifer W. Vedra, #43657
Knight Nicastro MacKay
518 17th Street, Suite 1005
Denver, Colorado 80202
&
304 W. 10th Street
Kansas City, MO 64105
Telephone: (720) 710-4911
Telephone: (816) 708-0105
Facsimile: (816) 396-6233
mackay@knightnicastro.com
vedra@knightnicastro.com

Attorneys for BHS, Inc. a/k/a BHS, Inc. of Wyoming

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2024, a true and correct copy of **BHS, INC. A/K/A BHS, INC. OF WYOMING'S RESPONSE TO PLAINTIFF'S MOTION AGAINST MODIFYING THE JUDGMENT BASED ON COLORADO'S NONECONOMIC DAMAGES CAP** was filed with the Court and served via ECF and addressed to all active counsel of record on ECF'S service list.

*/s/ Kelly Spicer*
**SIGNATURE ON FILE WITH MCCONAUGHY & SARKISSIAN, P.C.**