UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.: 1:21-CV-02230-NYW-STV

STEVEN STRAUGHEN,

    Plaintiff,

v.

BHS, INC. a/k/a BHS, INC. OF WYOMING

    Defendant.

---

**PLAINTIFF'S MOTION TO INCREASE NON-ECONOMIC DAMAGES CAP PURSUANT TO C.R.S. § 13-21-102.5**

---

    Plaintiff Steve Straughen, by and through counsel, ZANER HARDEN LAW, LLP, respectfully submits this request to increase the non-economic damages cap to include the total amount awarded by the jury. In support, Plaintiff states the following:

    **D.C.Colo.LCivR 7.1(a) Certification**: Undersigned counsel for Plaintiff conferred with counsel for the Defendant regarding this motion. Defendant opposes the relief sought.

    On December 12, 2019, Mr. Straughen suffered serious injuries after being blasted from the top of an exploding frac tank. The explosion left Mr. Straughen hospitalized in the SICU with numerous injuries including, but not limited to, an open book pelvic fracture, right fibular head

1

fracture, right tibial plateau fracture, right pilon fracture, 14 fractured ribs, lumbar transverse process fractures, pulmonary contusions, and spleen laceration. Mr. Straughen underwent multiple emergency surgeries, including placement of external fixators in his pelvis and right ankle, and remained hospitalized for 14 days, largely immobile while his fractures healed. He then spent 2 months in a nursing home where he had another surgery to remove the external fixator in his ankle, learned to walk again, and spent his daughter's second birthday.

Instead of healing, Mr. Straughen's right ankle only worsened. After an additional 2 years of suffering and exhausting all other options, Mr. Straughen underwent a below the knee amputation. This was just the beginning of Mr. Straughen's next chapter as his prosthetist struggled to properly fit a prosthetic, which will continue for the rest of Mr. Straughen's life as his limb changes. To this day, Mr. Straughen continues to experience pain in his lower back and right knee. His spine surgeon has recommended a sacroiliac joint fusion which Mr. Straughen is scheduled to undergo in a couple weeks. And this is not the end. Mr. Straughen has also been recommended a total knee replacement and hip replacement. Even after the surgeries are performed, Mr. Straughen will be left with a lifetime of pain, mental anguish, and inconvenience. Ultimately, Mr. Straughen will be wheelchair bound due to the degenerative cascade in his body resulting from his injuries. And none of this touches on the fact that the open book pelvic fracture caused a permanent change in Mr. Straughen's anatomy to the point that he cannot make love to his wife or have any more children.

Due to these physical injuries, Mr. Straughen has struggled mentally and emotionally as well. Mr. Straughen suffered a traumatic brain injury that has slowed his processing and impaired

his memory, which puts him at risk for early dementia. Emotionally, Mr. Straughen struggles each and every day with the reality of not being able to do all the things he dreamed of doing with his kids and not being able to continue his career in oil and gas. His injuries have also interfered with things he enjoyed before the crash, like hiking, snowboarding, competitive sailing, and mountain biking.

After hearing the testimony in this case at trial and deliberating for several hours, the jury awarded Mr. Straughen $15,000,000 in non-economic damages to account for his *past and future* "physical and mental pain and suffering, inconvenience, and emotional stress." [ECF 193, Instruction No. 18]. Mr. Straughen has 39.91 years of life left. [ECF 193, Instruction No. 10]. Given the substantial physical and mental pain and suffering, inconvenience, and emotional stress Mr. Straughen has endured and will continue to endure as a result of Defendant's negligence, Mr. Straughen seeks to increase the noneconomic damages above the cap of $468,010 to the full amount permissible by C.R.S. § 13-21-102.5(3)(a), $936,030.

## LEGAL STANDARD

Pursuant to C.R.S. § 13-21-102.5(3)(a), a trial court may increase the non-economic award up to $936,030 if that court finds justification by clear and convincing evidence of such damages. Although the statute requires a justification by clear and convincing evidence, "the trial court is **not** required to make a specific finding of clear and convincing evidence." *Herrera v. Gene's Towing,* 827 P.2d 619 (Colo.App.1992) (emphasis added).

The General Assembly included the higher limitation to act as a "relief valve" in order to avoid "penaliz[ing] legitimate victims who have had extensive pain and suffering beyond which

the [statutory cap] would cover." *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1365 (Colo. 1994) (citing *Senate Floor Debate on S.B. 67 Before the Full Senate,* 55th Gen.Assembly, 2d Reg.Sess., 2d Reading (Audio Tape 86–14, Feb. 25, 1986). Trial courts recognize that a jury's determination should not be overturned in favor of broad and indiscriminate application of the cap: "any cap on a jury verdict should be narrowly construed to meet the legislative intent and no more, because such caps usurp the right to trial by jury and derogate the common law." *Carpenter v. American Family Mutual Insurance Co.*, 13-CV-1986-JLK, attached as Ex. 1. In *Carpenter*, the Court found justification to allow the higher cap where the jury's verdict "suggest[s] calm deliberation rather than prejudice or hostility." *Id*.

Trial courts evaluate this on a case-by-case basis, often looking to expert testimony in addition to the testimony of the plaintiff. *See, e.g. Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 639 (Colo. App. 1998). In *Colwell*, the trial court determined that exceeding the cap was appropriate, based on the testimony of the plaintiff and the plaintiff's experts regarding the plaintiff's past and future experience with the injury, including her symptoms of nausea, lightheadedness, and double vision, and the fact that the plaintiff may eventually become wheelchair-bound and more limited in her job as a teacher. *Id*. This finding was upheld by the Court of Appeals. *Id*.

Similarly, a federal district court found that clear and convincing evidence justified the damages in excess of the cap where the evidence was "largely undisputed as to the nature and extent of the plaintiff's injuries." *Schwab v. Martino*, No. CIV.A. 05-CV-01456MS, 2007 WL 4522714, at *4 (D. Colo. Dec. 17, 2007). In *Schwab*, the evidence established that the plaintiff

4

endured several surgeries, took narcotic medications on a regular basis during treatment, and testified to having difficulty with walking, sitting, standing, sleeping, and showering. *Id*. Rejecting the defendant's conclusory assertions to the contrary, the trial court reasoned that the plaintiff's injuries were "severe" and "required prolonged treatment," justifying an award in excess of the cap. *Id*. at *5; *see also*, *Szentermai, M.D. v. American Family Mutual Insurance Co.*, No. 2010CV213, attached as Ex. 2 (finding the relief valve cap applies because "there is a wealth of evidence demonstrating how devastating this matter was to Plaintiff," including that he was displaced from his home for a year).

More recently, a trial court found the non-economic cap appropriately doubled in *Warembourg v. Excel Electric, Inc.,* No. 2017CV30891, attached as Ex. 3, where the plaintiff suffered from injuries that were "severe, profound, and life-altering" and further justified the doubling of the cap based on testimony regarding the plaintiff's "loss of his identity as an active father, an athlete, and a proud professional." *Id.* This was not disturbed on appeal. *Warembourg v. Excel Elec., Inc.*, 471 P.3d 1213, 1234 (Colo. App. 2020).

**ARGUMENT**

Plaintiff's injuries in this case likewise justify non-economic damages in excess of the cap to the full amount permissible by C.R.S. § 13-21-102.5(3)(a), $936,030. Ample evidence analogous to *Colwell* and *Schwab* was produced throughout trial to demonstrate that Plaintiff's injuries were severe and have required and will continue to require substantial treatment.

Dr. Leach testified about the state of Mr. Straughen's broken body when he arrived in the Emergency Room, as detailed in Exhibit 272:



Dr. Leach testified that Mr. Straughen had life-threatening injuries requiring surgeries of major weight bearing articulations and that it took a couple weeks in the surgical intensive care unit just to stabilize him. Ex. 4, Transcript Rough, Day 2, 65-66. Dr. Ellison testified that the open book pelvic fracture changed Mr. Straughen's anatomy to the point that Mr. Straughen experiences such debilitating pain that he is unable to perform intercourse. Ex. 5, Transcript Rough, Day 3, 132. Dr. Brown testified that Mr. Straughen eventually required a below the knee amputation due to unbearable pain resulting from the combination of equinus, post-traumatic arthritis, and nerve injury. Ex. 5, Transcript Rough, Day 3, 104-06. Specifically, Mr. Straughen was in so much pain and discomfort that the amputation was the only viable option to allow him to return to some sense of normalcy. Ex. 5, Transcript Rough, Day 3, 109. As discussed by Dr. Kent, Mr. Straughen

underwent a series of injections for ongoing lower back pain, including a basivertebral intracept procedure, but the pain persisted. Ex. 7, Transcript Rough, Day 5, 28-33. In addition to the prior treatment and surgeries, Dr. Kent discussed the need for additional surgery to repair Mr. Straughen's sacroiliac joint (which is scheduled), a spinal cord stimulator to help control his lower back pain, and ultimately a lumbar fusion should other measures fail.  Ex. 7, Transcript Rough, Day 5, 38-40.

The gravity of Mr. Straughen's past and ongoing physical and mental suffering and emotional stress was supported by his wife Ashley Straughen's testimony.  Ashley described seeing Mr. Straughen for the first time after the explosion in the hospital – he was intubated and "rigidly solid" with metal rods sticking out of him, only able to squeeze her hand to let her know he was alive. Ex. 5, Transcript Rough, Day 3, 186-87. Mr. Straughen remained heavily medicated for a couple months to control all the pain. Ex. 5, Transcript Rough, Day 3, 189. Dealing with his foot pain before the amputation, Mr. Straughen could barely muster the courage to walk at times. Ex. 5, Transcript Rough, Day 3, 191. Now, any time the weather changes it hurts Mr. Straughen "just to even walk around." Ex. 5, Transcript Rough, Day 3, 195. Mr. Straughen's friend Kyle Hanning described Mr. Straughen having to stop his kids from jumping on him because of the physical pain it would cause, which in turn caused more emotional pain from not being able to interact with his kids physically. Ex. 6, Transcript Rough, Day 4, 246.

Mr. Straughen himself testified to the physical, mental, and emotional pain he continues to endure.  At one point before the amputation, the pain of putting his foot down on the sand was so unbearable that Mr. Staughen had to crawl off the beach. Ex. 7, Trial Rough, Day 5, 172.  Now

after the amputation, Mr. Straughen is constantly fearful of taking a fall. Ex. 7, Trial Rough, Day 5, 174-75. His pelvis continues to constantly throb and nothing he does seems to help – not walking, not laying down, "it is just there." Ex. 7, Trial Rough, Day 5, 175. Mr. Straughen describes feeling like a failure not being able to do all the things he dreamed of doing with his kids, let alone even chase or play with them on the floor. Ex. 7, Trial Rough, Day 5, 179. Mr. Straughen describes, "I can never provide for them in the same way or be with them in the same way that I was before." Ex. 7, Trial Rough, Day 5, 167. His biggest fear is that "this is as good as it is going to get and all downhill from here… the idea that I could end up in a wheelchair in 10, 15 years. What is the point? I really don't have anything to look forward to. Hope, that's about it." Ex. 7, Trial Rough, Day 5, 179-80.

Finally, Defendant BHS did not dispute any of Mr. Straughen's past pain and suffering or the nature and extent of his injuries. Defendant did not ask Mr. Straughen a single question about his physical, mental, or emotional injuries or the pain he suffered and continues to suffer from those injuries. Ex. 8, Trial Rough, Day 6, 12-35. Even Defendant's own medical expert, Dr. Shenoi, did not dispute the seriousness of Mr. Straughen's injuries resulting from the explosion. Ex. 9, Trial Rough, Day 7, 22. Like in *Schwab v. Martino, supra,* the evidence was largely undisputed as to the nature and extent of Mr. Straughen's injuries, and there was no dispute they were caused in the explosion.

Rather than dispute Mr. Straughen had experienced pain and suffering (and other non-economic damages), Defendant only disputed the need for future care surgeries based on Mr. Straughen's current function and "manageable pain," which Dr. Shenoi testified could be treated

conservatively without surgery.  Ex. 9, Trial Rough, Day 7, 34-37.  With the jury clearly rejecting arguments that Mr. Straughen didn't need surgery (by awarding economic damages for all of the recommended surgeries and more), the Court is left with the largely undisputed damages as testified to by Mr. Straughen, Dr. Leach, Dr. Ellison, Dr. Brown, Dr. Kent, and Plaintiff's other lay witnesses.

Defendants further confirmed the serious nature of Plaintiff's past and future noneconomic damages in closing:

> There certainly was pain and suffering her, folks. I do not dispute that for one second…. I am not able to quantify noneconomic damages in any colorful way to you guys. That is solely for you guys to decide. We all have had life experiences with certain pain. I am not going to put a number in there. That is solely for you guys to determine. I will not even make a suggestion.

Ex. 10,  Trial Rough, Day 9, 52, 56.  The serious nature of Mr. Straughen's injuries and abundant pain cannot be denied. More importantly, the defense left it up to the jury to determine the number for pain and suffering based on their own life experiences. And here the jury awarded $15 million (>32x the cap). This number alone is indicative of clear and convincing evidence to warrant doubling of the cap.

Contrasting other cases where there was no justification for exceeding the cap, it is clear the circumstances here are not typical or run-of-the-mill.  For example, in *Pisano v. Manning*, 510 P.3d 572 (Colo. App. 2022), the Court denied the plaintiff's motion to increase the non-economic damages award where the plaintiff had alleged headaches, neck pain, and cognitive impairment. In that case, the defense disputed that the neck injury (and the need for future treatment) was caused by the accident.  *Id*. at 579.  Additionally, the Court reasoned that the jury did not find any

compensable physical impairments (awarding $0 in impairment damages), which the plaintiff had argued were the source of her noneconomic damages. *Id*.; *see also*, *Mower v. Centry I Chevrolet, Inc.*, No. CIV.A. 02-CV-01632-M, 2006 WL 2729265, at *22 (D. Colo. June 16, 2006) (denying the increase in non-economic damages because evidence at trial of noneconomic losses at trial was "relatively minimal and anecdotal" and did not include testimony from experts).

On the other hand, Mr. Straughen's noneconomic losses, as detailed above, were undisputedly related to the explosion on December 12, 2019, substantiated by both lay and expert witnesses, and further supported by the jury's finding of severe physical impairment (based on their award of $5 million) and severe pain and suffering (based on their award of $15 million). The effects of Defendant's negligence have changed the trajectory of Mr. Straughen's life and caused him immense physical and mental pain and suffering, inconvenience, and emotional stress. His injuries also require future treatment, much of which is invasive, requires lengthy recovery, and will not completely resolve his symptoms. After the immediate surgery—sacroiliac joint arthrodesis—he will still have further surgeries to endure in the future, i.e. total knee replacement, total hip replacement, lumbar fusion. Mr. Straughen's body with its constellation of injuries will never be the same, and he has forever lost the ability to pursue his passion in oil and gas, as well as his ability to be the father he dreamed of being. He has 40 years ahead of him with a broken body and missing limb, which will cause him pain, mental anguish, and frustration for the rest of his life. As bi-pedal creatures, humans require the use of their legs everywhere they go, at all times of the day. The physical and mental pain and suffering will only increase as he ages into his twilight years and as the posttraumatic arthritis progresses.

Given the overwhelming evidence of these concerns established at trial, increasing the non-economic damages in excess of the cap of $468,010 to the full amount permissible by C.R.S. § 13-21-102.5(3)(a), $936,030, is clearly justified.  As a result, the jury's award of non-economic damages should be honored and included in the final judgment. This would result in a principal judgment and prejudgment interest as follows:

| **Defendant** | **Principal** | **Prejudgment Interest** | **Per diem Interest** |
|---|---|---|---|
| BHS (80%) | $12,748,824.00 | $5,470,000.30 | $2,490.74 |

Therefore, total judgment against Defendant BHS should be amended and entered as $18,218,824.30 with interest continuing to accrue at the per diem rate of $2,490.74.17 through satisfaction of judgment. Ex. 11, Proposed Amended Judgment.

Respectfully submitted March 5, 2024.

ZANER HARDEN LAW, LLP

/s/ Kurt Zaner
Kurt Zaner, Esq.  #40989
Adam Fonta, Esq. #50471
Lia Rottman, Esq. # 52187
1610 Wynkoop Street, Suite 120
Denver, Colorado 80202
Phone Number: (303) 563-5354
Facsimile Number: (303) 563-5351
E-Mail:  kz@zanerhardenlaw.com
af@zanerhardenlaw.com
lr@zanerhardenlaw.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 5, 2024, a copy of **PLAINTIFF'S MOTION TO INCREASE NON-ECONOMIC DAMAGES CAP PURSUANT TO C.R.S. § 13-21-102.5** was electronically filed with the Court via the ECF Filing System, including e-service to the following:

Kate L. McDonald, #42284
Nathaniel Rioux Jordan, #52715
McConaughy & Sarkissian, P.C.
4725 S. Monaco Street, Suite 200
Denver, Colorado 80237
Telephone: (303) 649-0999
Email:kmcdonald@mslawpc.com
njordan@mslawpc.com
*Attorneys for Defendant BHS*

                                              */s/ Jenny Koenig*
                                              Jenny Koenig
                                              Senior Litigation Paralegal