**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.:  1:21-cv-02230-NYW-SP

STEVEN STRAUGHEN,

    Plaintiff

v.

BHS, INC. a/k/a BHS, INC. OF WYOMING,

    Defendant

---

**BHS, INC'S REPLY IN SUPPORT OF**
**MOTION FOR A NEW TRIAL UNDER FED. R. CIV. P. 59**

---

Defendant, BHS, Inc. a/k/a BHS, Inc. of Wyoming ("BHS"), through counsel, submits the following in support of its motion for a new trial pursuant to Fed. R. Civ. P. 59(a)(1).

## INTRODUCTION

BHS does not seek a "do-over", as Plaintiff suggests, merely because the trial was imperfect. It seeks a new trial because of the repeated and systematic misconduct of Plaintiff's counsel in violating court orders concerning presentation of evidence, as well as because the Court erred in allowing in undisclosed and inadmissible expert opinion and in allowing Plaintiff to seek specific damages never disclosed during discovery in violation of the Federal Rules of Civil Procedure. Additionally, the jury's verdict exceeded the amount of damages Plaintiff proved at trial. Each of these on their own warrant a new trial, and taken together, require it.

BHS does not lament that it did not get a perfect trial. Rather, it seeks the fair and impartial trial Plaintiff agrees it was entitled to and which it was denied because of myriad errors affecting its substantial rights.

## **ARGUMENT**

**I.   PLAINTIFF'S REPEATED ELICITATION OF TESTIMONY CONCERNING INADMISSIBLE OSHA CONCLUSIONS DEPRIVED BHS OF A FAIR TRIAL**

Plaintiff's Response appears to misunderstand the gravamen of the issues raised by BHS related to improper elicitation of testimony concerning inadmissible OSHA conclusions and findings. ***See generally*** **ECF 227, Pl. Resp. Br., pp. 3-9**. It is understandable that Plaintiff focused his response on what the Court permitted at trial rather than the many ways he violated the Court's order regarding what was not permitted, but the fact remains he repeatedly raised in front of the jury evidence the Court ruled inadmissible. BHS is entitled to a new trial because of the prejudice that caused.

Oddly, much of Plaintiff's response takes issue with the Court's ruling after BHS raised the reliability of OSHA's investigation and conclusions at the outset. He notes that BHS did not file a motion *in limine* to exclude the evidence and contends the oral argument before the Court was too limited to properly brief the issue or inform the Court before ruling.

Of course, Plaintiff did not file his own motion *in limine,* either, to argue the OSHA findings were reliable or admissible, and participated in the oral argument to the Court on the issue, though unsuccessfully. It is certainly possible that Plaintiff's discontent with the adverse ruling is why he ignored it so routinely during trial. Plaintiff's opinion on the robustness of information before the Court when it ruled is, of course, neither here nor there related to BHS's grounds for a new trial.

First, Plaintiff correctly stated in his Response that the Court "did not preclude Plaintiff from asking about the OSHA investigation more generally." *Id.* at p.4. BHS does not contend Plaintiff was precluded from asking about the investigation generally, nor that Plaintiff's witnesses were prohibited from stating they reviewed the OSHA report and considered it in forming their own opinions. Plaintiff also correctly pointed out that the OSHA conclusions were not admitted into evidence. *Id.* at 5. That is because the Court ruled them unreliable and inadmissible. However, the absence of the "conclusions" sections of the report from the

record does not mitigate the misconduct of Plaintiff's counsel in asking his witnesses to testify to what OSHA investigators concluded in order to get them into evidence through a side door.

Plaintiff argues a single line was inadmissible and because no one quoted it from the report, there was no prejudice. Plaintiff is wrong. While accusing BHS of cherry-picking from the transcript to support its argument (BHS simply cited to relevant instances in the record), Plaintiff did the same by asserting his question to an expert asking "and what did they find?" was asking only about maintenance findings but not inadmissible OSHA conclusions more broadly. *Id.* at 6. But asking an expert what the OSHA investigator found is precisely what the Court precluded and is the basis for BHS's motion for a new trial.

In addition, Plaintiff's argument that his experts were allowed to rely on inadmissible evidence like the precluded OSHA findings and conclusions again misses the point. So does whether Plaintiff "*intended* to introduce the conclusions themselves through these questions." *Id.* (emphasis added). That is irrelevant, because regardless of intent, the result was introduction of inadmissible evidence in violation of the Court's ruling. Plaintiff's examples of instances where he tried to avoid inadmissible testimony after BHS's many objections and requests for mistrial based on prior conduct are similarly irrelevant.

Slides and reports did not have to be entered into evidence for Plaintiff to violate the order precluding testimony or evidence about OSHA conclusions. BHS was not deprived a fair trial through Plaintiff's questions about what his experts reviewed or relied on in forming their own opinions, or because a report was admitted into evidence. The deprivation occurred when Plaintiff explicitly asked his witness what OSHA concluded, or alluded to the conclusions so the jury knew what they were. This was the back door through which Plaintiff violated the Court's order prohibiting testimony or evidence of OSHA's conclusions and findings intentionally, knowingly, and repeatedly.

Plaintiff did this in bad faith, it was not inconsequential, and there was no curative instruction to the jury despite BHS's continuous contemporaneous objections and requests

for a mistrial. *See U.S. v. Meridyth*, 364 F.3d 1181 (10th Cir. 2004) (outlining factors supporting grounds for a new trial related to eliciting witness responses in a "potentially improper way"). An objective evaluation of the totality of the circumstances, including the frequency of Plaintiff's violation of court orders and relevance to the issues before the jury, supports BHS's motion for a new trial and Plaintiff has failed to offer any relevant argument to the contrary. *See Cadorna v. City and Cnty. Of Denver, Colo.*, 245 F.R.D. 490, 491 (D. Colo. 2007).

## II. PLAINTIFF SHOULD NOT HAVE BEEN ALLOWED TO OFFER UNDISCLOSED EXPERT OPINIONS

Three of Plaintiff's retained experts offered reports with opinions they intended to offer at trial. Rule 26 required the reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Retained experts are expected to fully comply with the requirements of Rule 26(a)(2)(B) so "[w]ith that report in hand, and on the basis of the justifiable assumption that the report as submitted may be relied upon as a definitive disclosure of the testimony (including the opinions and bases therefor) of the expert, the opposing party will be in a position . . . to determine whether to 'arrange for expert testimony from other witnesses ....'" *SEC v. Nacchio*, 2008 U.S. Dist. LEXIS 117666, at *6-7 (D. Colo. 2008); *see also Chappel v. SBC- Ameritech*, 2007 U.S. Dist. LEXIS 51133, at *3-4 (N.D. Ill. 2007) ("expert reports must be 'detailed and complete' so that opposing counsel is not forced to depose an expert … to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources"). Plaintiff elicited opinion testimony not included in expert reports in violation of Rule 26 and such testimony should not have been allowed and prejudiced BHS.

4

### A. Dr. Sapp and Mr. Hughett's Undisclosed Testimony Should Not Have Been Allowed

Plaintiff's position is that his industry experts did not need to limit their testimony to disclosed opinions because the issues were "complex", thus they had wiggle room. In addition, he contends general discussion of purging in the reports from Dr. Sapp and Mr. Hughett was the same as actual opinions concerning the effects of holes on purging shared at trial, and that it is moot anyway because of Defendant's decision not to depose experts and instead rely on written reports and compliance with Rule 26. The latter contention is clearly erroneous based on the plain language of Rules 26 and 30 governing expert disclosures and depositions, respectively, as well as case law interpreting and applying them.

Indeed, contrary to the Court's ruling and Plaintiff's agreement that undisclosed opinion testimony was permitted because Defendant could have deposed the experts but did not, Rule 26 requires "a complete statement of all opinions the witness will express" specifically so a party does not have to depose experts. Fed. R. Civ. P. 26(a)(2)(B)(i); Notes of Advisory Committee on Rules—1993 Amendment. Plaintiff also contends the undisclosed opinions of Dr. Sapp and Mr. Hughett were harmless because "BHS knew that well gas could flow out of the tanks during the purge" based on its trial animations. **ECF 227, Pl. Resp. at p.13**. However, the logic is flawed.

What BHS "knew", should have known, or was presumed by Plaintiff to know is not the standard. Nor is whether BHS elected to take the optional deposition of an expert instead of relying on the disclosed opinions under rule 26 as it was entitled to do. In fact, just as Plaintiff argues BHS could have taken a deposition to find out additional opinions, Plaintiff could have, and was required to, ensure his experts' reports included the opinions he intended to offer at trial. Plaintiff should not be permitted to flout the clear and mandatory rules while wagging his finger at BHS for not taking an optional action and instead relying on the Rules Plaintiff ignored.

5

### B. Dr. Berliner Should Not Have Been Allowed To Testify To Information Not In His Report

Plaintiff's Response focused on irrelevant or inapplicable standards in defense of Dr. Berliner's undisclosed opinions, too. While Plaintiff noted Dr. Berliner's "'right' to base his 'opinion' on 'facts or data' that he 'personally observed,' including inadmissible hearsay evidence", he again missed the point that the prejudice to BHS did not derive from what Dr. Berliner relied on. BHS was prejudiced because Dr. Berliner, through Plaintiff, did not include in his report "a complete statement of all opinions the witness will express and the basis and reasons for them" as required. Fed. R. Civ. P. 26(a)(2)(B)(i). The Court erred in allowing Dr. Berliner to testify to conversations with treating physicians on which he relied but did not include in the report.

Plaintiff also pointed out the length of Dr. Berliner's report, which is completely irrelevant to whether the voluminous contents complied with Rule 26's clear requirements, and suggested that noting a conversation with a doctor occurred is the same as disclosing what was discussed or the actual opinion Dr. Berliner would be asked to share at trial as a result. It is not, and the lack of disclosed opinion prejudiced BHS and deprived it of the ability to investigate the opinions and bases for them. This prejudice was compounded by the instances where Dr. Berliner not only failed to include opinions or bases in his report which were the result of conversations with other doctors, but where his opinions were based on recommendations or content not even in the treating providers' records, i.e. BHS could not even look to medical records to obtain notice of the opinions, let alone in the expert report where it was required to be.

### III. PLAINTIFF VIOLATED RULES OF CIVIL PROCEDURE IN FAILING TO DISCLOSE DAMAGES AND SHOULD NOT HAVE BEEN ALLOWED TO REQUEST THEM AT TRIAL

Plaintiff was <u>required</u>, "without awaiting a discovery request," to provide "a computation of each category of damages claimed. . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). He did not provide the mandatory computation of damages claimed for non-economic damages

or impairment, despite BHS's request, and should not have been permitted to seek those damages at trial.

Plaintiff relied on the same cases BHS cited to in support of its argument, namely *Olsen v. Owners Insurance Company*, 2019 U.S. Dist. LEXIS 101048 (D. Colo. June 17, 2019) and 2022 WL 1791098 (D. Colo. June 1, 2022). He very selectively quoted the Court's interpretation of the requirement to disclose non-economic damages, however, including favorable language that such damages cannot be specifically calculated and are for the jury's determination, and excluding the unfavorable ultimate ruling that failure to disclose the amount sought meant he could not seek a specific amount for the undisclosed categories at trial. *Olsen v. Owners Ins. Co.*, 2019 U.S. Dist. LEXIS 101048, at *30 (D. Colo. June 17, 2019).

More importantly, Plaintiff omitted from his response and argument that if he intended "to seek a specific amount, then he <u>shall</u> disclose this figure . . . or risk preclusion from doing so at trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure." *Id.* at *30-31 (emphasis in original). Plaintiff's argument on the Rules alone is flawed, unsupported, and contrary to the language and intentions of Rule 26. He argues a plaintiff must only disclose a specific number for claimed damages after specific request, drawn-out disputes requiring court intervention, warning from the Court, and more motions. Plaintiff mischaracterized the Court's position in *Olsen* (2019), however, as warning or admonition rather than a ruling concerning disclosure requirements and consequences of failing to follow the Rules.

Further, Plaintiff admitted there is a scenario in which he was required to disclose the amount of non-economic and impairment damages he sought, and that was in response to interrogatories requesting the information followed by a refusal by Plaintiff. He then incorrectly (and curiously) stated "here there was no interrogatory, no refusal to disclose. . . ." **ECF 227, Pl. Resp. at p.19**. The truth is BHS served on Plaintiff the exact interrogatory he concedes compelled him to disclose his damages sought, and he refused to respond, undermining his whole argument:

7

> **7. IDENTIFY** all categories and the amounts of damages **YOU** are claiming, including any out-of-pocket expenses. For each category of claimed damages, provide an explanation of how **YOU** calculated the amount. **YOUR** response should be specific and should not refer generally to expert reports, as well as referencing documents supporting said damages.
>
> **RESPONSE: Objection. This request is overly broad and seeks information that is already in your possession or is equally accessible. Plaintiff's medical bills and wage loss documents have been disclosed. Please see Plaintiff's Fed. R. Civ. P. 26(a)(1) Disclosures for information pursuant to this request, which will be updated as additional damages are discovered. This interrogatory also calls for the opinion of expert witnesses. Plaintiff is not an expert in wage loss, medical billing, or medicine. Moreover, this interrogatory is premature, as Plaintiff's damages are continuing to accrue because he continues to treat, and discovery is ongoing. Without waiving objections, Plaintiff states: In addition to the economic damages outlined in my disclosures (past medical bills and past and future wage loss), ==I have suffered past and future non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, and impairment of quality of life. The total value of non-economic damages will be determined by the jury at trial==. I have also suffered ==physical impairment and disfigurement== from my injuries detailed in my medical records, including but not limited to a below the knee amputation and nerve damage, ==the value of which will be determined by a jury at trial==. Future medical bills and my wage loss will be fully presented via my expert disclosures.**

**Ex. A**, Pl. Resp. to Interrog., May 5, 2022 (emphasis added). Thus, BHS did exactly what Plaintiff argues it should have, i.e. that "if Defendant was so concerned with obtaining an exact pre-trial calculation of Plaintiff's non-economic and physical impairment damages, it could and should have served an interrogatory . . . ." **ECF 227, Pl. Resp. at p.19**. BHS did; it was Plaintiff who failed to play by his own rules.

Like other arguments, Plaintiff's assertion that BHS should have expected a large claim for non-economic and impairment damages fails to address the actual issue and ignores the stated purpose of Rule 26 and pre-trial disclosure to avoid surprise and allow for a fair trial. The reversible error was allowing Plaintiff to seek specific amounts of damages despite not only failing to comply with Rule 26 disclosure requirements, but then

8

refusing to disclose amounts claimed despite explicit request by BHS, something even he admits subjects the claims to preclusion. Moreover, BHS's experts did not address Plaintiff's non-economic claims as argued in his response. BHS's experts addressed economic claims as evidenced by their fields: accountant, doctor, life care planner, and prosthetist.

BHS does not argue the jury could not award any amount it wanted for the categories. Again, as missed by Plaintiff, he should not have been permitted to tell or ask the jury to award a specific number because one was never disclosed. Finally, Plaintiff's admission that he disclosed the amount "in open Court within minutes (if not seconds) of the request" belies his entire argument that he could not possibly disclose the amounts sought because they were indeterminable or unquantifiable, and something only the jury could determine.

Clearly, Plaintiff knew the amount of non-economic and impairment damages he claimed and planned to seek at trial, and intentionally failed to disclose them. Such an omission can only be intended to disadvantage the defendant, and did, as well as causing unfair prejudice and trial by ambush. The fact that the jury awarded different amounts than Plaintiff requested is irrelevant but supports BHS's position that the verdict likely would have been vastly different had Plaintiff been precluded from requesting a specific number, and the Court should therefore grant a new trial.

## IV. THE JURY'S VERDICT WAS UNSUPPORTED BY AND INCONSISTENT WITH THE EVIDENCE

BHS does not dispute the jury was charged with determining damages at the conclusion of the trial. However, even Plaintiff conceded in his Response that the jury was instructed to decide an amount "based on the evidence." **ECF 227, Pl. Resp. at p. 21; Pl. Ex. 21 to Resp.** Plaintiff also conceded the jury considered information not in evidence, which resulted in a verdict in excess of damages proved at trial. The Court should grant a new trial because of that.

9

For example, Dr. Berliner's life care plan provided for a life expectancy of 77 years, but the jury considered a longer one which added $350,000 to the damages. *Id.* at p.22. Curiously, Plaintiff contends the jury was not bound by the life expectancy testified to by Dr. Berliner in his expert capacity or the one it actually considered, but rather "had the prerogative to decide a longer life expectancy for Plaintiff, which would necessarily require additional funds." *Id.* It is unclear why Plaintiff submits the jury was not bound by the evidence in determining damages, but the case law cited by Plaintiff himself is to the contrary. *See, e.g., Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1281 (10th Cir. 2005) (jury award not to be disturbed unless it is completely without support in the record); *Bennett v. Longacre,* 774 F.2d 1024, 1028 (10th Cir. 1985) (damages awarded to be supported by competent evidence). If it was not in evidence, it was improper for the jury to consider it.

Plaintiff doubled down on his position that the jury could consider whatever it wanted in calculating damages on the issue of future treatment costs. He argued that although Dr. Berliner testified his future care costs, which were in evidence and submitted to the jury, were based on the 80th percentile, the jury could have determined "Plaintiff would need more than the 80th percentile accounted for by Dr. Berliner" and in using that higher number, not in evidence, the value of the life care plan would increase and ultimately put economic damages over the $10 million awarded by the jury. *Id.* at 22-23.

While the jury may not be required to "accept the numbers presented by an expert to the exclusion of all other evidence", it is required to limit is deliberations to actual evidence in the record and "medical expenses and loss of earnings must be proved by evidence demonstrating the reasonable value of those losses." *Williams v. Mo. Pac. R.R.,* 11 F.3d 132, 135 (10th Cir. 1993). In this case, even Plaintiff appears to admit the jury did not determine damages based on evidence, and the Court should either order a remittitur of the excessive verdict or order a new trial. *Garcia v. Gallup Auto Sales*, 1999 U.S. Dist. LEXIS 25195, at *4 (D.N.M. 1999).

## **CONCLUSION**

Plaintiff repeatedly violated Court Orders regarding the admissibility of OSHA's conclusions and findings, introduced undisclosed expert opinions throughout trial, refused to disclose the amount claimed for non-economic damages despite the Rules, specific request, and clearly knowing the amount sought, and the jury returned a verdict in excess of what was proven at trial. As a result, BHS did not receive a fair and impartial trial. The Court should grant a new trial pursuant to Fed. R. Civ. P. 59(a) or, at a minimum, vacate the award of economic damages.

Dated this 2nd day of May, 2024.

Respectfully submitted,

By: */s/ Kate L. McDonald*
    Kate L. McDonald, #42284
    Nathaniel Rioux Jordan, #52715
    McConaughy & Sarkissian, P.C.
    4725 S. Monaco Street, Suite 200
    Denver, Colorado 80237
    Telephone: (303) 649-0999
    Facsimile: (303) 649-0990
    kmcdonald@mslawpc.com
    njordan@mslawpc.com

AND

By: */s/ Jennifer W. Vedra*
    Jennifer W. Vedra, #43657
    Derek H. MacKay, Missouri #59078
    Knight Nicastro MacKay
    518 17th Street, Suite 1005
    Denver, Colorado 80202

    &

    304 W. 10th Street
    Kansas City, MO 64105
    Telephone: (720) 710-4911
    Telephone: (816) 708-0105

Facsimile: (816) 396-6233
mackay@knightnicastro.com
vedra@knightnicastro.com

*Attorneys for BHS, Inc. a/k/a BHS, Inc. of Wyoming*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2024, a true and correct copy of BHS, Inc's Reply In Support of Motion For A New Trial Under Fed. R. Civ. P. 59 was filed with the Court and served via ECF and addressed to all active counsel of record on ECF's service list.

/s/ Jennifer W. Vedra
SIGNATURE ON FILE WITH KNIGHT NICASTRO MACKAY, LLC